Ameer Benno, Esq.
Sivin & Miller, LLP
20 Vesey Street, Suite 1400
New York, NY 10007
(t)(212) 349-0300
(f)(212) 406-9462
abenno@sivinandmiller.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLBY FIEDLER,<br><br>                    Plaintiff,<br><br>    -against-<br><br>P.O. MICHAEL INCANDELA, P.O. JOHN FOCAS, P.O. STEVEN CAPPARELLI, P.O. DANE FLYNN, P.O. RICHARD YASSO, P.O. STACEY CUNNEEN, P.O. MOIRA HUGGINS SGT. CHRISTOPHER FOLEY, THE COUNTY OF NASSAU, and THE COUNTY OF SUFFOLK,<br><br>                    Defendants. | Index No.<br><br>**COMPLAINT**<br><br>Plaintiff Demands Trial By Jury |

Plaintiff, by his attorneys, SIVIN & MILLER, LLP, complaining of defendants, alleges as follows, upon information and belief:

**PRELIMINARY STATEMENT**

1.   This is a civil rights action in which the plaintiff, COLBY FIEDLER, seeks relief for, _inter_ _alia_, the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and of rights secured by the Constitution of the United States, including but not limited to

the Fourth and Fourteenth Amendments, and by the New York State Constitution.

2.   Plaintiff seeks damages, both compensatory and punitive, an award of costs, interest and attorney's fees, and such further relief as this Court deems equitable and just.

3.   Plaintiff was falsely arrested and maliciously prosecuted for Criminal Possession of Stolen Property. Defendants, acting alone and in concert with each other, engaged in a deliberate, coordinated, and unjustified effort to procure the arrest, detention, prosecution and conviction of Plaintiff on charges of which Plaintiff was in fact innocent and for which no reasonable cause of guilt existed. This included a course of conduct and pattern of behavior whereby Defendants, inter alia, created and fabricated evidence to create the appearance of probable cause to believe that Plaintiff had committed offenses, intentionally and maliciously concealed material exculpatory evidence, and suborned perjurious testimony. In so doing, Defendants played a pivotal role in Plaintiff's false arrest/imprisonment and malicious prosecution.

4.   After a prosecution lasting over fourteen months, all charges against Plaintiff were dismissed with prejudice.

5.   Plaintiff now seeks damages for defendants' unconstitutional actions that deprived him of his liberty and inflicted physical and emotional suffering upon him.

**JURY TRIAL DEMANDED**

6.   Plaintiff demands a trial by jury on each of the claims pleaded herein

**JURISDICTION**

7.   This court has jurisdiction over this action in that the action arises under 42 USC § 1983, and thus this Court has subject matter jurisdiction of the action under 28 USC §§ 1331, 1343(a), (3), and (4).

8.   This Court may also exercise supplemental jurisdiction over the plaintiff's state law claims that arise from the same facts and circumstances under 28 USC § 1367.

**VENUE**

9.   Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c).

**NOTICE OF CLAIM**

10.   That heretofore and on or about the 21st day of February 2013, Plaintiff's Notice of Claim was duly served upon and filed with defendant COUNTY OF NASSAU (hereinafter, "NASSAU").

11.   That heretofore and on or about the 21st day of February 2013, Plaintiff's Notice of Claim was duly served upon and filed with defendant COUNTY OF SUFFOLK (hereinafter, "SUFFOLK").

12.   That at least thirty (30) days have elapsed since the demand or claim upon which this action is predicated was presented

to defendants for adjustment and they have neglected and/or refused to make adjustments or payment thereof.

13.   That this action is not commenced more than one year and ninety (90) days after the state law causes of action accrued.

## THE PARTIES

14.   Plaintiff is a resident of the State of New York.

15.   That at all times relevant herein, defendant NASSAU was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16.   Defendant NASSAU, its agents, servants and/or employees operated, maintained and controlled the Nassau County Police Department (hereinafter, "NCPD").

17.   That at all times relevant herein, NCPD was a subdivision, department or agency of defendant NASSAU.

18.   That at all times relevant herein, defendant NASSAU was under an obligation to use reasonable care in the hiring, training, retention, and supervision of its employees.

19.   That at all times relevant herein, defendant SUFFOLK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

20.   Defendant SUFFOLK, its agents, servants and/or employees operated, maintained and controlled the SUFFOLK County Police Department (hereinafter, "SCPD").

21.   That at all times relevant herein, SCPD was a

subdivision, department or agency of defendant SUFFOLK.

22.   That at all times relevant herein, defendant SUFFOLK was under an obligation to use reasonable care in the hiring, training, retention, and supervision of its employees.

23.   That at all times relevant herein, defendant P.O. MICHAEL INCANDELA (hereinafter, "INCANDELA") was a police officer employed by co-defendant NASSAU and in particular by the NCPD.

24.   That at all times relevant herein, defendant INCANDELA was duly appointed and acting as an officer, servant, employee, and/or agent of the NCPD.

25.   That at all times relevant herein, defendant INCANDELA was acting within the scope and course of his employment with the NCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful pursuit of his duties as an officer, servant, employee, and/or agent of the NCPD.

26.   That at all times relevant herein, defendant INCANDELA was acting outside the scope and course of his employment with the NCPD, but under color of state law.

27.   That defendant INCANDELA is sued in both his individual and official capacities.

28.   That at all times relevant herein, defendant P.O. JOHN FOCAS (hereinafter, "FOCAS") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

29.   That at all times relevant herein, defendant FOCAS was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

30.   That at all times relevant herein, defendant FOCAS was acting within the scope and course of his employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful pursuit of his duties as an officer, servant, employee, and/or agent of the SCPD.

31.   That at all times relevant herein, defendant FOCAS was acting outside the scope and course of his employment with the SCPD, but under color of state law.

32.   That defendant FOCAS is sued in both his individual and official capacities.

33.   That at all times relevant herein, defendant P.O. STEVEN CAPPARELLI (hereinafter, "CAPPARELLI") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

34.   That at all times relevant herein, defendant CAPPARELLI was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

35.   That at all times relevant herein, defendant CAPPARELLI was acting within the scope and course of his employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful

pursuit of his duties as an officer, servant, employee, and/or agent of the SCPD.

36. That at all times relevant herein, defendant CAPPARELLI was acting outside the scope and course of his employment with the SCPD, but under color of state law.

37. That defendant CAPPARELLI is sued in both his individual and official capacities.

38. That at all times relevant herein, defendant P.O. DANE FLYNN (hereinafter, "FLYNN") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

39. That at all times relevant herein, defendant FLYNN was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

40. That at all times relevant herein, defendant FLYNN was acting within the scope and course of his employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful pursuit of his duties as an officer, servant, employee, and/or agent of the SCPD.

41. That at all times relevant herein, defendant FLYNN was acting outside the scope and course of his employment with the SCPD, but under color of state law.

42. That defendant FLYNN is sued in both his individual and official capacities.

43.  That at all times relevant herein, defendant P.O. RICHARD YASSO (hereinafter, "YASSO") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

44.  That at all times relevant herein, defendant YASSO was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

45.  That at all times relevant herein, defendant YASSO was acting within the scope and course of his employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful pursuit of his duties as an officer, servant, employee, and/or agent of the SCPD.

46.  That at all times relevant herein, defendant YASSO was acting outside the scope and course of his employment with the SCPD, but under color of state law.

47.  That defendant YASSO is sued in both his individual and official capacities.

48.  That at all times relevant herein, defendant P.O. STACEY CUNNEEN (hereinafter, "CUNNEEN") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

49.  That at all times relevant herein, defendant CUNNEEN was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

50.  That at all times relevant herein, defendant CUNNEEN was

acting within the scope and course of her employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of her lawful pursuit of her duties as an officer, servant, employee, and/or agent of the SCPD.

51.   That at all times relevant herein, defendant CUNNEEN was acting outside the scope and course of her employment with the SCPD, but under color of state law.

52.   That defendant CUNNEEN is sued in both her individual and official capacities.

53.   That at all times relevant herein, defendant P.O. MOIRA HUGGINS (hereinafter, "HUGGINS") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

54.   That at all times relevant herein, defendant HUGGINS was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

55.   That at all times relevant herein, defendant HUGGINS was acting within the scope and course of her employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of her lawful pursuit of her duties as an officer, servant, employee, and/or agent of the SCPD.

56.   That at all times relevant herein, defendant HUGGINS was acting outside the scope and course of her employment with the

SCPD, but under color of state law.

57.   That defendant HUGGINS is sued in both her individual and official capacities.

58.   That at all times relevant herein, defendant SGT. CHRISTOPHER FOLEY (hereinafter, "FOLEY") was a police officer employed by co-defendant SUFFOLK and in particular by the SCPD.

59.   That at all times relevant herein, defendant FOLEY was duly appointed and acting as an officer, servant, employee, and/or agent of the SCPD.

60.   That at all times relevant herein, defendant FOLEY was acting within the scope and course of his employment with the SCPD, and under color of state law, and otherwise performed and engaged in conduct incidental to the performance of his lawful pursuit of his duties as an officer, servant, employee, and/or agent of the SCPD.

61.   That at all times relevant herein, defendant FOLEY was acting outside the scope and course of his employment with the SCPD, but under color of state law.

62.   That defendant FOLEY is sued in both his individual and official capacities.

63.   At all times relevant herein, defendants acted jointly and in concert with each other.

**STATEMENT OF FACTS**

64.   The facts stated in this complaint are based, _inter_

_alia_, on the personal knowledge of Plaintiff regarding events in which he was directly involved and upon information and belief. The sources of "information and belief" factual statements are primarily documents from the underlying criminal prosecution and related public documents which are currently available to Plaintiff. Those sources are incomplete, particularly, without limitation, as to numerous documents and court exhibits. This complaint is drawn without the benefit of discovery proceedings.

65. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

66. At approximately 2:50 p.m. on December 20, 2011, Plaintiff was lawfully upon the property of 28 Knoll Street, located in the Village of Lindenhurst, Town of Babylon, County of Suffolk, State of New York.

67. At that date, time, and location, Defendants, acting both principally and in concert, with deliberation and malice, apprehended, arrested, detained, and imprisoned Plaintiff with deliberate indifference to Plaintiff's constitutional rights and without legal justification, privilege or probable cause.

68. One of the reasons defendants engaged in the illegal actions described herein was because property belonging to defendant INCANDELA's girlfriend had gone missing several weeks earlier, and defendant INCANDELA with the collusion, aid, and

knowing support of the co-defendants herein sought to impress his girlfriend by causing Plaintiff to be arrested and charged for that offense.

69.   Yet another collateral objective for defendants' illegal actions herein described was because public outcry from the community over a string of thefts of parcels from the front steps of several homes within the respective jurisdictions of the NCPD and the SCPD during the holiday season put those agencies, and by extension, all defendants herein, under tremendous pressure to hold someone accountable for those offenses, irrespective of whether there existed reasonable cause to believe that such person had committed those offenses.

70.   Additionally, prior to this incident, a 20-year-old Lindenhurst woman claimed that defendant Incandela, who had arrested her for a DWI, thereafter stalked her, trying to get a date.

71.   This woman alleged that Defendant Incandela had found her on MySpace, sent her naked pictures of himself, and offered to fix her case get rid of her DWI charge in exchange for sex if she didn't tell anyone.

72.   These allegations resulted in at least 10 administrative charges being brought against Incandela, and triggered an internal investigation.

73.   This incident was highly publicized throughout all print

and television media outlets throughout Nassau and Suffolk Counties and the metro-New York region.

74.  Upon information and belief, Defendant Incadela believed that he could reduce the negative publicity on him and perhaps salvage his career if he were to "crack" the case involving the string of parcel thefts and provide information that would lead to arrest of a person or persons for those offenses.

75.  Accordingly, upon information and belief, Defendant Incandela wanted to hold someone accountable for those offenses, irrespective of whether in fact there existed reasonable cause to believe that such person had committed those offenses.

76.  Defendants' collateral objectives additionally included covering up their illegal actions in knowingly arresting Plaintiff without any legal basis, justification, or probable cause.

77.  Upon being unlawfully arrested, Plaintiff was transported to a nearby SCPD police stationhouse by Defendants, and was placed in a cell.

78.  After being imprisoned for several hours by Defendants, Plaintiff was eventually issued a desk appearance ticket and released from police custody upon the posting of bail, the amount of which had been arbitrarily determined by Defendants and which was payable to Defendant SUFFOLK.

79.  Had Plaintiff been unable to post the amount of bail that Defendant SUFFOLK, through its agents, servants and/or

employees, including defendants FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, and INCANDELA, had arbitrarily set, he would have remained imprisoned at least until the next day.

80. In this regard, Defendant SUFFOLK, through its agents, servants and/or employees, including defendants FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, and INCANDELA, knew that it could extort money out of Plaintiff if he were arrested, and this venal purpose constituted yet another impermissible collateral objective for Plaintiff's unlawful arrest and prosecution.

81. Defendants all knew that the allegations against Plaintiff were false and completely fabricated and that there was never any legal basis to have detained or arrested Plaintiff and that there was no legal basis to prosecute him.

82. Nevertheless all Defendants conspired to lodge false allegations against Plaintiff and initiate a prosecution against him for offenses they knew he did not commit.

83. Defendants made these false allegations against Plaintiff with actual malice, and out of spite and ill will, and with retributive purpose.

84. Defendants engaged in the above-described conduct intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

85. Following Plaintiff's arrest, Defendants knowingly

relayed to the Suffolk County District Attorney's Office false information against Plaintiff that Defendants had devised.

86. Based on these fabricated allegations, Plaintiff was arraigned on three separate informations, each charging him with one count of Criminal Possession of Stolen Property in the Fifth Degree.

87. Defendants FLYNN, CUNNEEN, and YASSO each signed misdemeanor complaints against Plaintiff, thereby swearing to the veracity of the allegations against Plaintiff under penalty of perjury, despite each of them knowing that there was no truth to those allegations whatsoever.

88. In January 2012, Plaintiff was arraigned on all three criminal complaints, which collectively charged him with three counts of Criminal Possession of Stolen Property in the Fifth Degree, under docket numbers 2011SU060013, 2011SU060014, and 2011SU060015.

89. Plaintiff pleaded not guilty to all counts, and was released on his own recognizance.

90. Plaintiff thereafter was required on multiple occasions to appear in court to defend against the criminal charges that had been lodged against him.

91. During the course of Plaintiff's prosecution, defendant INCANDELA wrote and signed a supporting deposition under oath that inculpated Plaintiff, despite Defendant INCANDELA knowing that his

averments were materially false and inaccurate.

92.  Defendant INCANDELA's perjurious statement was made and signed under oath in the presence of Defendant FOCAS, who also knew that all or material portions of Defendant INCANDELA's statement were untrue.

93.  The prosecution of Plaintiff continued until January 24, 2013, at which time all charges against Plaintiff were dismissed.

94.  Plaintiff at no times relevant herein engaged in any prohibited or illegal conduct.

95.  As a result of the collective acts of Defendant SUFFOLK, its agents, servants and/or employees, including Defendants FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, FOLEY, and INCANDELA, and defendant NASSAU, its agents, servants and/or employees, including defendant INCANDELA, plaintiff sustained severe personal injuries and emotional distress.

96.  As a direct and proximate result of the aforementioned actions of all Defendants, Plaintiff sustained severe personal injuries, endured and continues to endure emotional pain and suffering and a loss of enjoyment of life, and has otherwise been damaged.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY**
**(42 U.S.C. § 1983 based on False Arrest/Imprisonment)**

97.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length

herein.

98.   By virtue of the aforementioned unlawful arrest and imprisonment, Plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable or unlawful searches and seizures and to due process of law.

99.   Defendants are sued in their individual and official capacities.

100. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

101. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### (Malicious Prosecution under State Law)

102. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

103. By virtue of the aforementioned acts, Defendants are liable to Plaintiff for malicious prosecution.

104. As a result of the foregoing, Plaintiff was severely and

seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

105. Said acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the laws and Constitution of the State of New York.

106. Defendants SUFFOLK and NASSAU are liable for the damages suffered by Plaintiff as a result of the conduct of their agents, servants, and/or employees under the doctrine of respondeat superior.

107. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY
### (42 U.S.C. § 1983 based on Malicious Prosecution)

108. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

109. By virtue of the aforementioned acts, Plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of

law.

110. Defendants are sued in their individual and official capacities.

111. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

112. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### (Abuse of Process under State Law)

113. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

114. By the conduct and actions described above, Defendants employed regularly issued process against Plaintiff compelling the performance or forbearance of prescribed acts.

115. The purpose of activating the process was intent to harm Plaintiff without economic or social excuse or justification, and Defendants were seeking a collateral advantage or corresponding detriment to Plaintiff which was outside the legitimate ends of the process.

116. The acts and conduct of Defendants were the direct and

proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

118. That defendants NASSAU and SUFFOLK are liable for the damages suffered by Plaintiff as a result of the conduct of its agents, servants, and/or employees, including defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, under the doctrine of respondeat superior.

119. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY
#### (42 U.S.C. § 1983 based on Abuse of Process)

120. By the conduct and actions described above, Defendants employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed acts.

121. The purpose of activating the process was intent to harm Plaintiff without economic or social excuse or justification, and Defendants were seeking a collateral advantage or corresponding detriment to Plaintiff which was outside the legitimate ends of

the process.

122. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and that by virtue of the aforementioned acts, plaintiff was deprived of his rights, privileges and immunities secured by the Constitution of the United States, including his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable or unlawful searches and seizures and to due process of law.

123. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

124. That defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY are sued in their individual and official capacities.

125. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
#### (Negligence/Gross Negligence)

126. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

127. By failing to exercise reasonable care in connection with the performance of their duties, in failing adequately to evaluate the situation confronting them, and by failing to take adequate steps to investigate whether Plaintiff in fact possessed stolen property, or whether he possessed property with knowledge that said property was stolen, defendants failed to exercise reasonable care in connection with the performance of their duties, and therefore are liable to Plaintiff in negligence and gross negligence.

128. Said acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the laws and Constitution of the State of New York.

129. Defendants NASSAU and SUFFOLK are also liable for the damages suffered by Plaintiff as a result of the conduct of their agents, servants, and/or employees, including defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, under the doctrine of respondeat superior.

130. The aforementioned incident and injuries were caused by reason of the recklessness, carelessness, and negligence/gross negligence of Defendants herein and without any negligence on the part of Plaintiff contributing thereto.

131. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other

damages.

132. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.


**SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS NASSAU AND SUFFOLK**
**(Negligent Training, Supervision, Disciplining and Retention)**

133. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

134. The aforesaid unlawful arrest, imprisonment, and prosecution of Plaintiff and resulting injuries to him were due to the negligence and/or gross negligence of defendants NASSAU and SUFFOLK in failing to use reasonable care in the hiring, training, supervision, disciplining and retention of their employees, including without limitation Defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY.

135. Due to the negligent hiring, training, supervision, disciplining and retention by Defendants NASSAU and SUFFOLK of their employees, including without limitation defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to

scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

136. Said acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the laws and Constitution of the State of New York.

137. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

**EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
(New York State Law Conspiracy)

138. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

139. By the actions described above, Defendants jointly and severally, acting in their individual capacities and under color of law, conspired together and maliciously and willfully entered into a scheme to deprive Plaintiff of his rights, liberty, and well-being and to commit the unlawful acts described herein.

140. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the laws and Constitution of the State of New York.

141. That Defendants NASSAU and SUFFOLK are liable for the damages suffered by Plaintiff as a result of the conduct of their agents, servants, and/or employees under the doctrine of respondeat superior.

142. That as a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

143. Defendants are sued in their individual and official capacities.

144. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### NINTH CAUSE OF ACTION AGAINST DEFENDANTS INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY
#### (Conspiracy under 42 U.S.C. § 1983)

145. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

146. Defendants FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY agreed, cooperated, participated, and conspired with defendant INCANDELA to assist in and effectuate Plaintiff's unlawful arrest, detention, imprisonment, and malicious prosecution, and in so doing deprived Plaintiff of his rights,

privileges and immunities secured by the Constitution of the United States, including, but not limited to, his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures and to due process of law.

147. Defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY are sued in their individual and official capacities.

148. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

149. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

## TENTH CAUSE OF ACTION AGAINST DEFENDANT NASSAU
### (42 U.S.C. §1983 - "Monell" Claim)

150. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

151. All of the acts by Defendants were carried out pursuant to policies and practices of Defendant NASSAU which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of Defendant NASSAU and its

agency, the NCPD.

152. Defendant NASSAU and the NCPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified Defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or acquiesced in and allowed or encouraged these acts to continue.

153. Defendants' actions described herein resulted from and were taken pursuant to de facto policies and/or well-settled and widespread customs and practices of Defendant NASSAU, which are and were implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite exculpatory evidence known to them and withheld from accused persons, including Plaintiff herein, in furtherance of a plan to deprive such persons of their right to a fair trial and to secure and sustain criminal convictions at all costs.

154. The existence of such unlawful de facto policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the NCPD and Defendant NASSAU for a substantial period of time.

155. Despite knowledge of such unlawful de facto policies and practices, these supervisory and policy-making officers and officials of the NCPD and Defendant NASSAU and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of

their authority, and instead sanctioned and ratified these policies, customs, and practices through their deliberate indifference to, or reckless disregard of, the effect of said policies, customs and practices upon the constitutional rights of persons in the community.

156. Defendant NASSAU's policies and practices in existence at the time of the conduct complained of herein, which caused Plaintiff's injuries herein include, inter alia, the following:

    a. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

    b. The failure to properly supervise, train, instruct, and discipline police officers with regard to the preparation of truthful accusatory instruments;

    c. The failure to properly supervise, train, instruct, and discipline police officers with regard to the preparation of truthful police paperwork, or to correctly and accurately document and preserve evidence or to memorialize investigative steps taken, or circumstances surrounding the obtaining of evidence, that could be relevant to the investigation and/or prosecution, and/or discoverable in any litigation;

    d. The failure to properly supervise, train, instruct, and discipline police officers with regard to the New York State Penal Law and the state and federal

Constitutions, and with regard to adequate evidence of crimes and to discipline those who unjustifiably charge and prosecute or continue to prosecute persons accused of crimes in the absence of probable cause;

e. The failure to properly supervise, train, instruct, and discipline police officers with regard to the exercise of their authority, including, without limitation, in regard to disclosure of exculpatory and/or impeaching evidence;

f. The failure to disclose to the prosecution or the defense material evidence that is favorable to the accused person(s), either because of its exculpatory or impeachment value, in violation of an accused person's substantive and procedural due process rights and Brady v. Maryland, 373 U.S. 83 (1963) and its progeny;

g. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper methods of conducting interviews of witnesses and/or accused persons, and to discipline police officers who use improper methods to coerce and/or elicit false statements;

h. The failure to properly supervise, train, instruct, and discipline police officers, including defendants herein, known to be irresponsible in their dealings with citizens of the community, known to violate state and federal law and state and federal

constitutional limitations in their investigative and law enforcement conduct, known to fabricate and falsify evidence, known to manipulate, intimidate, threaten, and coerce witnesses, known to deprive criminal defendants of their right to a fair trial, and known to arrest and initiate/continue prosecution in the absence of probable cause;

i. Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to mislead the public;

j. Failing to adequately investigate, monitor, audit, and respond to citizen complaints and other claims of police misconduct with the NCPD, such that defendant NASSAU and the NCPD knew about and acquiesced in a custom of tolerating constitutional, statutory, and common law violations;

k. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper, and constitutional, methods of conducting police investigations, including identification procedures, and of adequately preserving and documenting all critical aspects of such procedures, including the circumstances surrounding the procedure and all statements made by or to the witness participating in

the procedure;

l. The tacit acceptance of and encouragement of a code of silence wherein police officers regularly cover up police misconduct by refusing to report other officers' misconduct or by telling false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Internal Affairs Bureau and other oversight agencies, and in public statements designed to cover for and/or falsely exonerate accused police officers;

m. Encouraging and/or failing to discipline officers for "testilying" and/or fabricating false evidence to bring about the police officers' preconceived perceptions or determinations of guilt, including, but not limited to, such perceptions and/or determinations influenced by racial prejudice and/or ethnic bias.

157. Defendant NASSAU's aforementioned policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the broad sweeping police misconduct detailed herein, where distinct sets of police officers endeavored to procure the arrest, prosecution and conviction of Plaintiff on charges of which Plaintiff was in fact innocent by, inter alia, creating and fabricating evidence, intentionally and maliciously concealing material exculpatory evidence, suborning perjurious testimony, and unduly influencing the statements and testimony of witnesses and

the identifications made by witnesses by means of threats, coercion, violence, and deceit.

158. Upon information and belief, police officers receive no training – or woefully inadequate training – regarding maintaining the integrity of police investigations and veracity of statements provided to them by witnesses or others, and are encouraged and indoctrinated in the use of isolation, false promises, threats, intimidation, and deceit to manipulate and influence witnesses, and to create and fabricate evidence to create the appearance of probable cause.

159. Upon information and belief, defendant NASSAU and its agency, the NCPD, failed to effectively screen, hire, train, supervise and discipline their police officers, including the Defendants herein, for lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing said police officers to be in a position to manipulate witnesses, manufacture and fabricate evidence, and conceal evidence so as to secure convictions in violation of federal and state constitutional rights, and/or to permit these actions to take place with those officers' knowledge or consent.

160. On information and belief, the defendant police officers herein were the subject of prior civilian and/or departmental complaints of misconduct that gave notice to, or should have given notice to defendant NASSAU and its agency, the NCPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the

public, such as the conduct complained of by Plaintiff herein.

161. On information and belief, defendants NASSAU and the NCPD had prior notice of the vicious propensities of the defendant police officers herein, and of the inadequacies and constitutionally violative conduct in said police defendants' investigative techniques, and in said police defendants' conspicuous and regular pattern of conduct in depriving persons of their constitutional and civil rights, and in depriving criminal defendants of their right to a fair trial, but took no meaningful steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

162. As a result of the foregoing conscious policies, practices, customs and/or usages, defendant NASSAU and its agency, the NCPD, permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of having their constitutional rights violated and of being subjected to preconceived determinations of guilt.

163. Plaintiff's injuries were a direct and proximate result of Defendants' wrongful policies, practices, customs and/or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowing and repeated failure of the defendant NASSAU and the NCPD to properly supervise, train and discipline their police officers.

164. Defendant NASSAU knew or should have known that the acts alleged herein would deprive Plaintiff of his rights, in violation of the United States Constitution and the Constitution of the

State of New York, including, without limitation, Plaintiff's freedom from deprivation of liberty without due process of law and right to be free from unreasonable searches and seizures.

165. Defendant NASSAU is directly liable and responsible for the acts of defendant officers herein because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NCPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

166. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

167. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

### ELEVENTH CAUSE OF ACTION AGAINST DEFENDANT SUFFOLK
#### (42 U.S.C. § 1983 - "Monell" Claim)

168. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

169. All of the acts by the police defendants described above were carried out pursuant to policies and practices of Defendant

SUFFOLK which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of Defendant SUFFOLK and its agency, the SCPD.

170. Defendant SUFFOLK and the SCPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the police defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or acquiesced in, allowed or encouraged these acts to continue.

171. The actions of the police defendants resulted from and were taken pursuant to de facto policies and/or well-settled and widespread customs and practices of Defendant SUFFOLK, which are implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite exculpatory evidence known to them and withheld from accused persons, including Plaintiff herein, in furtherance of a plan to deprive such persons of their right to a fair trial and to secure and sustain criminal convictions at all costs.

172. The existence of such unlawful de facto policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the SCPD and Defendant SUFFOLK for a substantial period of time.

173. Despite knowledge of such unlawful de facto policies and

practices, these supervisory and policy-making officers and officials of the SCPD and Defendant SUFFOLK and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs, and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the community.

174. Defendant SUFFOLK's policies and practices in existence at the time of the conduct complained of herein, which caused Plaintiff's injuries herein include, inter alia, the following:

      a. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

      b. The failure to properly supervise, train, instruct, and discipline police officers with regard to the preparation of truthful accusatory instruments;

      c. The failure to properly supervise, train, instruct, and discipline police officers with regard to the preparation of truthful police paperwork, or to

correctly and accurately document and preserve evidence or to memorialize investigative steps taken, or circumstances surrounding the obtaining of evidence, that could be relevant to the investigation and/or prosecution, and/or discoverable in any litigation;

d. The failure to properly supervise, train, instruct, and discipline police officers with regard to the New York State Penal Law and the state and federal Constitutions, and with regard to adequate evidence of crimes and to discipline those who unjustifiably charge and prosecute or continue to prosecute persons accused of crimes in the absence of probable cause;

e. The failure to properly supervise, train, instruct, and discipline police officers with regard to the exercise of their authority, including, without limitation, in regard to disclosure of exculpatory and/or impeaching evidence;

f. The failure to disclose to the prosecution or the defense material evidence that is favorable to the accused person(s), either because of its exculpatory or impeachment value, in violation of an accused person's substantive and procedural due process rights and Brady v. Maryland, 373 U.S. 83 (1963) and

its progeny;

g. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper methods of conducting interviews of witnesses and/or accused persons, and to discipline police officers who use improper methods to coerce and/or elicit false statements;

h. The failure to properly supervise, train, instruct, and discipline police officers, including defendants herein, known to be irresponsible in their dealings with citizens of the community, known to violate state and federal law and state and federal constitutional limitations in their investigative and law enforcement conduct, known to fabricate and falsify evidence, known to manipulate, intimidate, threaten, and coerce witnesses, known to deprive criminal defendants of their right to a fair trial, and known to arrest and initiate/continue prosecution in the absence of probable cause;

i. Failing to establish or assure the functioning of a bona fide and meaningful departmental system for dealing with complaints of police misconduct, but instead responding to these types of complaints with bureaucratic power and official denials calculated to

mislead the public;

j. Failing to adequately investigate, monitor, audit, and respond to citizen complaints and other claims of police misconduct with the SCPD, such that defendant SUFFOLK and the SCPD knew about and acquiesced in a custom of tolerating constitutional, statutory, and common law violations;

k. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper, and constitutional, methods of conducting identification procedures, and of adequately preserving and documenting all critical aspects of such procedures, including the circumstances surrounding the procedure and all statements made by or to the witness participating in the procedure;

l. The tacit acceptance of and encouragement of a code of silence wherein police officers regularly cover up police misconduct by refusing to report other officers' misconduct or by telling false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Internal Affairs Bureau and other oversight agencies, and in public statements designed to cover for and/or falsely exonerate accused police officers;

m. Encouraging and/or failing to discipline officers for "testilying" and/or fabricating false evidence to bring about the police officers' preconceived perceptions or determinations of guilt, including, but not limited to, such perceptions and/or determinations influenced by racial prejudice and/or ethnic bias.

175. Defendant SUFFOLK's aforementioned policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the broad sweeping police misconduct detailed herein, where distinct sets of police officers endeavored to procure the prosecution and conviction of Plaintiff on charges of which Plaintiff was in fact innocent by, inter alia, creating and fabricating evidence, intentionally and maliciously concealing material exculpatory evidence, suborning perjurious testimony, and unduly influencing the statements and testimony of witnesses and the identifications made by witnesses by means of threats, coercion, violence, and deceit.

176. Upon information and belief, police officers receive no training – or woefully inadequate training – regarding maintaining the integrity and veracity of statements provided to them by witnesses or others, and are encouraged and indoctrinated in the use of isolation, false promises, threats, intimidation, and

deceit to manipulate and influence witnesses, and to create and fabricate evidence to create the appearance of probable cause.

177. Upon information and belief, defendant SUFFOLK and its agency, the SCPD, failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to manipulate witnesses, manufacture and fabricate evidence, and conceal evidence so as to secure convictions in violation of federal and state constitutional rights, and/or to permit these actions to take place with those officers' knowledge or consent.

178. On information and belief, the defendant police officers herein were the subject of prior civilian and/or departmental complaints of misconduct that gave notice to, or should have given notice to defendant SUFFOLK and its agency, the SCPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by Plaintiff herein.

179. On information and belief, defendants SUFFOLK and the SCPD had prior notice of the vicious propensities of the defendant police officers herein, and of the inadequacies and constitutionally violative conduct in said police defendants'

investigative techniques, and in said police defendants' conspicuous and regular pattern of conduct in depriving persons of their constitutional and civil rights and in depriving criminal defendants of their right to a fair trial, but took no meaningful steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority.

180. As a result of the foregoing conscious policies, practices, customs and/or usages, defendant SUFFOLK and its agency, the SCPD, permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of having their constitutional rights violated and of being subjected to preconceived determinations of guilt.

181. Plaintiff's injuries were a direct and proximate result of Defendants' wrongful policies, practices, customs and/or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowing and repeated failure of the defendant SUFFOLK and the SCPD to properly supervise, train and discipline their police officers.

182. Defendant SUFFOLK knew or should have known that the acts alleged herein would deprive Plaintiff of his rights, in violation of the United States Constitution and the Constitution of the State of New York, including, without limitation, Plaintiff's freedom from deprivation of liberty without due

process of law and right to be free from unreasonable searches and seizures.

183. Defendant SUFFOLK is directly liable and responsible for the acts of defendant officers herein because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the SCPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

184. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

185. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

## TWELFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
(Violation of Article I, §§ 6 and 12 of the NYS Constitution)

186. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

187. That by virtue of the aforementioned acts, Defendants are liable to Plaintiff for violating his right to due process of

law and to be free of unreasonable and unlawful searches and seizures under Article I, §§ 6 and 12 of the New York State Constitution, respectively.

188. The acts and conduct of the agents and employees of defendants NASSAU and SUFFOLK, including defendants INCANDELA, FOCAS, CAPPARELLI, FLYNN, YASSO, CUNNEEN, HUGGINS, and FOLEY, were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

189. That Defendant NASSAU and SUFFOLK are liable for the damages suffered by Plaintiff as a result of the conduct of its agents, servants, and/or employees under the doctrine of respondeat superior.

190. As a result of the foregoing, Plaintiff was severely and seriously injured, both bodily and mentally, suffered a loss of liberty and a loss of enjoyment of life, suffered great indignity and humiliation, was held up to scorn and ridicule, was injured in his character and reputation, and suffered economic loss and other damages.

191. The amount of damages sought in this action exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction.

*       *       *

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against each Defendant:

a.  Compensatory damages in an amount to be determined by a jury and in an amount which exceeds the jurisdictional limits of all lower Courts that might otherwise have jurisdiction herein;

b.  Punitive damages in an amount to be determined by a jury;

c.  The convening of a jury to consider the merits of the claims herein;

d.  Attorney's fees pursuant to 42 U.S.C. § 1988;

e.  An award of Plaintiff's costs of suit;

f.  Pre-judgment and post-judgment interest;

g.  Such other further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

Dated:  New York, NY
        April 22, 2014

                        Yours, etc.,

                        SIVIN & MILLER, LLP

                By:     *Ameer Benno*
                        _____
                        Ameer Benno [AB-1130]
                        20 Vesey Street, Suite 1400
                        New York, NY 10007

Tel.: (212) 349-0300
abenno@sivinandmiller.com
Attorneys for Plaintiff